553 So.2d 180 (1989)
J.M. BEESON COMPANY, Appellant,
v.
Ernesto SARTORI, Appellee.
Nos. 87-1953, 87-2415 and 87-2693.
District Court of Appeal of Florida, Fourth District.
August 30, 1989.
On Motion for Clarification December 13, 1989.
Kevin J. O'Grady of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellant.
Linda R. Spaulding and Harris K. Solomon of Brinkley, McNerney, Morgan and Solomon, Fort Lauderdale, for appellee.
*181 WARNER, Judge.
This appeal by a general contractor questions an amended final judgment in favor of the owner of a shopping center, awarding liquidated damages for delay and compensatory damages to complete construction.
This opinion was ready to be issued when a suggestion of bankruptcy of appellant was filed. We ordered appellant to notify the court when the automatic stay of bankruptcy was lifted. However, appellee points out to us the case of W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989), in which the supreme court held that where a supersedeas bond has been posted by the bankrupt, the bond is not the property of the bankrupt estate. Therefore, a court may proceed to determine a suit between the bankrupt and a third party despite the automatic stay in bankruptcy. If the third party is successful on the merits, then it may satisfy its claim to the extent of the supersedeas bond. In this case, a supersedeas bond has been posted. Therefore, on the authority of W.W. Gay and mindful of the limitations on the recovery available to appellee thereunder, we proceed with our opinion on the merits of this case.
The appellant and appellee entered into a construction contract in 1983. It provided for the construction of a shopping center including several anchor tenants and outparcels. The contract provided for liquidated damages of $1,000.00 per day if appellant failed to substantially complete the project within 300 days of commencement. It further provided for a bonus of $1,000.00 per day for each day the project was finished prior to the completion date. Appellant commenced construction and within six months put two anchor tenants into their spaces. The remainder of the retail spaces received their certificates of occupancy within the 300-day period, but an anchor tenant in an outparcel was not given its certificate of occupancy until over a year after commencement. Shortly thereafter, the appellant-contractor left the job because of nonpayment and filed suit. Appellee counterclaimed for breach of contract and for the liquidated damages provided in the contract. After trial, the court awarded judgment in favor of appellee. This appeal ensued.
Appellant first contends that the trial court erred in awarding the liquidated delay damages to appellee, because they amounted to a penalty and had no reasonable relation to the actual damages suffered by appellee. However, this point is controlled by Murray v. Chillemi, 396 So.2d 1222 (Fla. 4th DCA 1981). In that case, as in this case, the appellant failed to raise the issue in the trial court and therefore was precluded from raising it on appeal. Furthermore, we would note that where liquidated damages are attacked, it is the burden of the defendant to raise the excessiveness of the damages as an affirmative defense. See C.T. McCormick, Handbook on the Law of Damages at 622-623 (1977). Having failed to raise this issue below, we therefore find no error on this point.
Secondly, appellant contends that the trial court erred in finding that he did not substantially complete the work. In this case the contract provided that "substantial" completion occurred when "construction is sufficiently complete in accordance with the Contract Documents, so the owner can occupy or utilize the work or designated portion thereof for the use for which it is intended." The "work" under the contract "comprises the completed construction required by the contract documents." Under the contract in this case the work consisted of "construction and completion of a Shopping Center", including all of its component parts such as landscaping and paving.
The contract also provides that the date of substantial completion is to be certified by the supervising architect. On this project, however, there was no supervising architect who approved certificates for payment or certified substantial completion. In fact, the appellee's contract with his architect specifically deleted any responsibilities on behalf of the architect to supervise payments and to certify the date of substantial completion. Thus, we must determine *182 whether or not the trial court applied the correct definition of substantial completion to the facts of this case.
We agree with appellant's contention that the contractual definition of substantial completion in this case is similar to the well established doctrine of substantial performance, and the terms are interchangeable. See Ramada Development Co. v. Rauch, 644 F.2d 1097 (5th Cir.1981). The doctrine of "substantial performance" as held by this court in Ocean Ridge Development Corp. v. Quality Plastering, Inc., 247 So.2d 72, 75 (Fla. 4th DCA 1971) states:
Substantial performance is that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny the promisee the full contract price subject to the promisor's right to recover whatever damages have been occasioned him by the promisee's failure to render full performance. See 3A Corbin on Contracts, Section 702 et sequi.
To say that substantial performance is performance which is nearly equivalent to what was bargained for, as the case law defines the term, in essence means that the owner can use the property for the use for which it is intended. Furthermore, in defining substantial performance, one of the tests as enunciated by Corbin is the "degree of frustration of purpose":
Extremely important factors in solving the present problem [of what is substantial performance] are the character of the performance that the plaintiff promised to render, the purposes and end that it was expected to serve in behalf of the defendant, and the extent to which the nonperformance by the plaintiff has defeated those purposes and ends, or would defeat them if the errors and omissions are corrected.
Corbin on Contracts, 3-A, Section 706. Thus, substantial completion as defined in the contract is the equivalent of substantial performance under the case law and authorities hereinbefore cited.
In the instant case as of March, 1984, all phases of the shopping center had been completed sufficiently so as to obtain the certificates of occupancy from the city. Thus, the owner was capable of having tenants occupy the spaces and collecting rents thereon, and he was already collecting substantial rents on many of the tenant spaces prior to that date.
Despite the appellee's ability to rent out the shopping center spaces, the trial court found that appellant had not substantially completed the work by relying on an architect who testified that there still may not be substantial performance even though tenants were capable of occupying the premises, if the certificate of substantial completion called for in the contract had not been issued by the supervising architect. But this witness also testified that where there is no architect to give the certification, as there was none in this case, he would rely on the licensing authority and its certificate of occupancy to tell him that all work had been substantially completed under the contract. In this case, that occurred in March, 1984.[1] While this architect also testified that if a portion of the amenities such as landscaping are not fully complete, then there would be no substantial completion according to the contract, such a definition of substantial completion is contrary to both the contract and the case law, and the court erred in placing reliance on it.[2] As even the architect noted, when the owner can put tenants in possession for fixturing and can begin to collect rents, the owner begins to utilize the work for its intended purpose. When the owner was able to occupy and fixture the constructed space, the construction was *183 substantially completed. Fred Howland, Inc. v. Gore, 152 Fla. 781, 13 So.2d 303 (1942). At that point, the appellant was entitled to his full contract price, less the cost to complete and the damages due to delay from the contract completion date through the date of substantial completion, and the trial court erred in determining that appellant had not substantially completed the contract.
This decision is also supported by American Motors Inns of Fla., Inc. v. Bell Elec. Co., 260 So.2d 276 (Fla. 4th DCA 1972), where this court held that substantial performance is met if the omission is not so serious that it cannot be remedied by payment from the contract price. In this case, the amount due and owing under the contract was $157,392 at the time the contractor left the job. The amount required to remedy the deficiencies and unperformed work as found by the trial court was $68,939.70. Thus, there were sufficient monies still due the contractor from which the costs of completion could be deducted to satisfy the defects.[3]
Further, we find that the trial court erred in determining that appellant walked off the job without cause. In this case the appellee had not followed the terms of the contract with respect to payment pursuant to the certificates of payment requested and had failed to pay for change orders to which he had agreed. This breach by the owner would have justified the appellant's cessation of work. Bryan & Sons Corp. v. Klefstad, 237 So.2d 236 (Fla. 4th DCA 1970). Therefore, the trial court erred in determining that there was no good cause for the contractor's termination of performance.
Consequently, we reverse the final judgment and remand for a redetermination of the date of substantial completion consistent with the principles set forth in this opinion; to calculate the amount of liquidated damages due to the appellee for failing to substantially complete within the 300-day period; and further to determine the amount due to the contractor on the contract, less the costs to complete. The other point raised for reversal is now moot. We also reverse the awards of attorney's fees and costs and remand for a redetermination after recalculation of the judgment.
Reversed and remanded.
DOWNEY and DELL, JJ., concur.
WARNER, Judge.

ON MOTION FOR CLARIFICATION
We grant the motion for clarification. Appellant correctly points out that our directions upon reversal presume that the trial court must find that substantial completion occurred subsequent to the 300-day contract time period, when the evidence may show that substantial completion occurred at an earlier date. Since that is a factual determination which the trial court must make based upon the legal principles expressed in our opinion, we clarify our directions and order that the trial court determine the date of substantial completion, and, if it finds that substantial completion did not occur within the 300-day contract period, then it may calculate the amount of liquidated damages due to appellee.
However, we disagree with appellant's contention that it might also be entitled to the bonus provided in the contract if the trial court were to find substantial completion within the 300-day contract period. The bonus provision applied only if appellant completed the project within the 300-day *184 period. The construction contract made a distinction between the bonus, which was awarded upon completion, and the liquidated damages provision, which applied only if appellant failed to substantially complete within the contract period. The trial court found that Beeson was not entitled to the bonus, and the evidence unquestionably shows that the project work was not complete within the 300-day contract period (as distinguished from "substantially complete"). Therefore, we clarify our opinion and affirm the trial court's judgment in this respect.
Finally, appellant expresses a belief that we have not considered the change orders allowed by the trial court. Such is not the case. We have simply directed that the court determine the amount due to the contractor on the contract less the costs to complete. Unless appellant wishes to ignore its own contract, the change order procedure provided for in the contract would change the contract sum. Therefore, our directive to the trial court to determine the amount due on the contract necessarily includes the change orders which the trial court found as part of the contract.
DOWNEY and DELL, JJ., concur.
NOTES
[1] At another place in the testimony the architect conceded that utilization of the buildings may have occurred at an earlier date. Thus, we do not determine, as a matter of law, that substantial completion only occurred at the issuance of the certificate of occupancy in this case.
[2] The architect witness also attempted to define substantial completion in terms of the dollar amount left to be done on the project (1/4 of 1% of the contract-price), but that too is contrary to the definition of substantial completion or performance which focuses on the owner's ability to utilize the construction.
[3] The owner's measure of damages for cost to complete for a breach of a construction contract where the contractor fails to complete performance is the difference between the contract price and the reasonable cost to the owner to complete the improvements in accordance with the contract. Sea Ledge Properties, Inc. v. Dodge, 283 So.2d 55 (Fla. 4th DCA), cert. dismissed, 285 So.2d 618 (Fla. 1973). In this case, appellant was due $157,926.00. In order for the project to reach completion, the trial court found that it would cost appellee only $68,939.70. Thus, even if the contract had not been substantially performed, appellee would not be entitled to a judgment for the cost to complete where it was less than the contract price still outstanding. See Melnick v. Reynolds Metal Company, 230 So.2d 490 (Fla. 4th DCA 1970); Bryan v. Owsley Lumber Co., 201 So.2d 246 (Fla. 1st DCA 1967).