**RELIANCE INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**UTAH DEPARTMENT OF TRANSPORTATION, Defendant and Appellee.**

No. 910413.

Supreme Court of Utah.

Aug. 16, 1993.

---

Clark B. Fetzer, Patrick S. Hendrickson, Salt Lake City, for plaintiff.

R. Paul Van Dam, Atty. Gen., Leland D. Ford, Asst. Atty. Gen., Salt Lake City, for defendant.

HOWE, Associate Chief Justice:

Reliance Insurance Company appeals from a judgment enforcing a liquidated damages provision in a construction contract against a contractor. We examine the validity of the liquidated damages provision and determine whether the doctrine of substantial completion applies to these facts.

## FACTS

In the spring of 1985, the Great Salt Lake was rising to near-record levels and threatening a portion of Interstate Highway 80 which runs along the south shore of the lake, west of Salt Lake City. On April 30, 1985, the Utah Department of Transportation ("UDOT") awarded a construction contract to L.A. Young Sons Construction Company ("Young") to raise a section of the highway and protect it from the lake waters. The contract price for the entire project was approximately $9,941,000.

Young began work on May 2, 1985. The contract required that the project be completed by October 15, 1985. In relevant part, it stated:

> When the contract completion time is an affixed calendar date, it shall be the date on which all work on the project shall be completed.

The contract also included a provision for liquidated damages of $600 for every day

that work continued beyond the October 15 completion date:

> [F]or each calendar day ... after a specified completion date that any work shall remain uncompleted ..., the sum specified below will be deducted from any money due the contractor, not as a penalty, but as liquidated damages for Department's increased overhead.
>
> ....
>
> When final acceptance has been duly made by the Engineer as prescribed, ... the daily time charge will cease.

On October 14, 1985, Young requested and received a 10–day extension to lay asphalt. The major work of the project was finished by October 25, 1985, and the highway was fully opened for travel. Still, further work remained, such as installing signs, furnishing topsoil, and seeding. The project also lacked some landscaping and permanent paint striping. These uncompleted requirements extended the work into the winter months, but due to weather conditions, no work was done between January 14 and February 24, 1986. Consequently, UDOT granted an additional 42–day extension for this winter time period.

Work on the project resumed on February 25, 1986, and continued intermittently until September 12, 1986. UDOT terminated time charges on June 13, 1986, after the topsoil was placed and the seeding and striping completed. Ultimately, UDOT granted an additional 43–day extension of time charges due to its own error in the process of clearing a materials site.

Plaintiff Reliance Insurance Company was surety on Young's bond. Young eventually defaulted on several other projects, and Reliance intervened and made payments on behalf of Young. Reliance thereby became subrogated to Young's claim against UDOT on this project. Reliance is the sole appellant in this case, and Young is not a party to this appeal.

Reliance and UDOT both agree that the sum of the allowed extensions was 85–days

and that the final delay equaled 156 days. At $600 per day, the total liquidated damages withheld was $93,600. The project was federally aided and qualified for reimbursement of over ninety-four percent of the cost of approved contract items by the federal government. UDOT consulted with the Federal Highway Administration ("FHWA") during the course of the project, and the FHWA was involved in granting extensions to the contracted time period.

Reliance brought this action to recover the $93,600 withheld by UDOT. Trial was had to the bench. The trial court upheld the liquidated damages provision as binding upon the parties. It also concluded that the doctrine of substantial performance raised by Reliance was inapplicable to these facts and therefore UDOT could retain the $93,600 as appropriate liquidated damages.

## STANDARD OF REVIEW

■ This court gives deference to the trial court's findings of fact, and we will not set them aside unless we find them to be clearly erroneous. Utah R. Civ.P. 52(a). Under this standard, we will not disturb factual findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made. *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987). We review the trial court's legal conclusions for correctness, affording no deference. *Ong Int'l (U.S.A.) v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993).

## ANALYSIS

■ In determining the validity of a liquidated damages provision, this court has adopted section 339 of the Restatement of Contracts. *Robbins v. Finlay*, 645 P.2d 623, 626 (Utah 1982); *Perkins v. Spencer*, 121 Utah 468, 476–77, 243 P.2d 446, 450–51 (1952). Section 339 states in pertinent part:

(1) [A]n agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

Restatement of Contracts § 339 (1932) [hereinafter Restatement]. We will examine the validity of the UDOT provision for liquidated damages according to this standard.

## I. REASONABLE FORECAST

■ The Restatement's test first requires that the liquidated damages provision be a reasonable forecast of any actual increased overhead incurred by UDOT because of the delayed completion of the project. If it turns out that the liquidated damages and the actual increased overhead are reasonably related, this is persuasive evidence that the initial forecast was also reasonable. If, on the other hand, the liquidated damages are disproportionate to the actual compensatory damages sustained, this may be evidence of an unreasonable forecast and the provision may be deemed a penalty and not enforced. *Young Elec. Sign v. United Standard West*, 755 P.2d 162, 164 (Utah 1988) (citing *Madsen v. Anderson*, 667 P.2d 44, 47 (Utah 1983)). However, any disparity must be "grossly excessive" and must "shock the conscience" of this court before we declare the liquidated damages void. *Allen v. Kingdon*, 723 P.2d 394, 397 (Utah 1986).

■ Whether an amount was a reasonable forecast is determined by looking at the contract, not at the time of its breach, but rather at the time of its formation. *Perkins*, 121 Utah at 474, 243 P.2d at 449; *Hanlon Drydock & Shipbuilding Co. v. McNear Inc.*, 70 Cal.App. 204, 213, 232 P.

1002, 1005–06 (Dist.Ct.App.1925). In other words, if the parties were honestly trying to arrange in advance a fair basis for determining actual damages, it makes no difference whether this arrangement turns out to be too much or too little. *Hanlon Drydock*, 70 Cal.App. at 212, 232 P. at 1005; Restatement § 339 cmt. (1); 5 Arthur L. Corbin, *Law of Contracts* § 1060, at 351–52 (1964) [hereinafter Corbin] (honest and reasonable effort at preestimation will be sustained). In determining whether the liquidated damages are excessive, this court will not look back with twenty-twenty hindsight after the breach has occurred. Instead, we will examine the $600–per–day stipulation as Young and UDOT initially did, looking forward from the time of formation.

■ The issue of whether liquidated damages are a reasonable forecast of actual damages is one of fact. We therefore give deference to the trial court's finding that there was a reasonable correlation between the damages actually incurred and those provided for in the liquidated damages provision of the contract. The trial court heard the testimony of UDOT employees and saw the documentary evidence, including time logs and expense reports. The trial court had the opportunity to judge the credibility of each witness. This court is not in the same position to determine factual disputes, and it is because of this disadvantage that we afford deference to the lower court. *Western Kane County*, 744 P.2d at 1377.

■ Reliance contends that the $93,600 assessed under the liquidated damages clause is not proportionate to the actual damages incurred by UDOT. In calculating the actual damages and in determining their reasonableness, this court is limited by those extra costs that UDOT incurred as a result of Young's delay. The liquidated damages clause specifically states that the $600–per–day assessment is not intended as a penalty but is intended to reimburse UDOT for increased overhead.

■ At trial, the parties agreed that UDOT incurred additional overhead as a result of Young's delay. These costs included equipment rental, employee salaries, and utility bills. However, Reliance and UDOT disagreed on how to calculate this increased overhead. Both sides presented documentary evidence and oral testimony as to specific expenditures on specific dates. There are some factual disputes as to how much overhead was actually incurred as a result of Young's delay. In marshaling the evidence, Reliance contends that the actual increased overhead was only a fraction of the claimed $93,600. UDOT counters that the amount withheld is reasonable and, in fact, the actual increased overhead surpassed this figure. UDOT adds that its typical daily overhead charges exceeded $1,000.

There is some evidence supporting both sides of this argument. UDOT's engineer testified that several employees were required to be present on the project during the time of the delay and consequently UDOT incurred significant charges. It is also evident that the overhead expenses were not uniform throughout the delay but varied on a daily basis. Some days the daily expense well exceeded $600, and other days there was no expense at all.

Reliance argues that there would have been certain overhead costs regardless of Young's delay and they should not be considered. Reliance also attempted to demonstrate at trial that the liquidated damages claimed by UDOT were disproportionate to the actual costs spent on the remaining part of the highway project. Specifically, Reliance contends that UDOT assessed $93,600 of overhead costs to complete only $350,000 of work. Similar arguments as to proportionality were addressed by the North Carolina Court of Appeals in *Ledbetter Brothers v. North Carolina Department of Transportation*, 68 N.C.App. 97, 314 S.E.2d 761 (1984). In that case, a contractor and a subcontractor's surety brought an action challenging the North Carolina department of transportation's withholding liquidated damages in a highway construction venture. In its interpretation of the contract language, the North Carolina court found that the liquidated damages for delay were reasonably related to the actual damages sustained. *Id.* at 107, 314 S.E.2d at 768. The court stated that no precise mathematical formula exists for determining when liquidated damages are reasonably proportionate to the contract price. The effect of a reasonable liquidated damages clause is to

substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby [prevent] a controversy between the parties as to the amount of damages.... [T]he sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount.

*Id.* at 106–07, 314 S.E.2d at 768.

At the time of contract formation in this case, the parties were contemplating a major highway construction project that totaled nearly ten million dollars. Even though the highway was open to traffic during the delay, construction personnel and vehicles of both Young and UDOT were still present to finish the project. Such expense had to be considered at contract formation. Both parties realized that any delay would result in UDOT's incurring various additional overhead expenses. There is evidence to support the trial court's findings that $600 per day was a reasonable forecast. Certainly that amount neither appears grossly excessive nor shocks the conscience of this court. *Allen*, 723 P.2d at 397. Thus, the first requirement of the Restatement's test is satisfied.

## II. DIFFICULTY IN ESTIMATION

■ We must now determine whether the second part of the Restatement's standard is satisfied, that is, whether the harm caused by the breach is one that is incapa-

ble or very difficult of accurate estimation. *Robbins*, 645 P.2d at 626; Restatement § 339. Again, we make this determination looking from the point of contract formation. Corbin § 1060, at 350. It is irrelevant whether the actual damages were capable of easy or practicable calculation at the time of the breach:

> [T]he question is not as to the status of the parties when the contract terminated, but as to the status of the parties at the time they made the contract. It may be as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But, if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then under the authorities there is no reason why that may not be anticipated and contracted for in advance.

*Hanlon Drydock*, 70 Cal.App. at 213, 232 P. at 1005–06.

■ Reliance emphasizes that UDOT had a responsibility to keep detailed records of its costs to obtain reimbursement from the FHWA. These figures produce an estimate which appears in UDOT's standard specifications. It follows, Reliance argues, that any increased overhead due to delay is easily calculable because the information is readily available through UDOT's accounts. It is true that UDOT kept extensive records. However, this is not the only relevant fact to be considered in deciding whether the increased overhead was easily estimable.

This particular project was an emergency project and had to be inserted into UDOT's existing schedule. In fact, during the delay on the Young project, UDOT was simultaneously monitoring another nearby highway project. UDOT was sharing manpower with this second project, and the records do not adequately distinguish between the two. In addition, as Reliance itself asserts, there were some expenses that UDOT would have incurred irrespective of the delay. These include engineer inspections and material calculations. It is difficult to discern which expenses UDOT would have incurred regardless of the delay and which were a direct consequence of Young's delay. Such an estimation is particularly arduous when done at the time of contract formation, months before any delay occurred. In the initial stages of contracting, the parties realized that this was an emergency project to be added to an existing construction schedule. At this early stage, it would have been quite difficult to predict the precise damages for any delay on the Young project as distinguished from the expenses of coinciding highway work. Undoubtedly, it is for similar reasons that liquidated damages provisions are common in construction contracts where the injury is seldom one of accurate estimation. Corbin § 1072, at 405–07. Looking forward from the point of contracting, we conclude that an accurate estimation of any harm caused by the breach would be difficult. Therefore, the second part of the Restatement's test is satisfied.

■ It should be mentioned that the trial court also concluded that these costs were difficult to ascertain. However, it did so on inappropriate grounds. It considered possible damage to the relationships between UDOT and the FHWA or between UDOT and other competing bidders. The trial court found that these types of damages are very difficult to calculate. We conclude that we should not consider any such injury. The contract language explicitly states that the liquidated damages are intended to cover only increased overhead incurred by UDOT. Any possible injury to the UDOT relationships caused by the delay obviously goes beyond overhead expenses.

■ In this instance, we are reluctant to supplant our appraisal of the damages for that of the contracting parties. *See Perkins*, 121 Utah at 478, 243 P.2d at 451. The educated estimate of two professional

participants experienced in contract formation will usually arrive at a more reasonable figure than that formulated by either the trial or the appellate court. The contracting parties were not in substantially disparate bargaining positions. *See Robbins*, 645 P.2d at 627. There is no evidence of unfairness in the negotiating process, and this construction contract was formed at arm's length. *Id.* Young and UDOT had a right to contract for liquidated damages, and such a right should not be lightly interfered with. *Warner v. Rasmussen*, 704 P.2d 559, 563 (Utah 1985) (citing *Jacobson v. Swan*, 3 Utah 2d 59, 65, 278 P.2d 294, 298 (1954)).

### III. APPLICABILITY OF SUBSTANTIAL COMPLETION DOCTRINE

 Reliance raises the doctrine of substantial completion in attacking the liquidated damages provision. Substantial completion and substantial performance are virtually identical for our purposes. *J.M. Beeson Co. v. Sartori*, 553 So.2d 180, 182 (Fla.Dist.Ct.App.1989). Substantial performance exists "where there has been no willful departure from the terms of the contract, and no omission in essential points, and the contract has been honestly and faithfully performed in its material and substantial particulars." *Black's Law Dictionary* 1281 (5th ed. 1979). A party has substantially performed when "the only variance from the strict and literal performance consists of technical or unimportant omissions or defects." *Id.* Reliance argues that the work remaining on the project after the completion date of October 25 was not substantial. It points out that the highway was open to public use. It insists that only a small percentage of the entire highway renovation remained and it would be unfair to assess the entire $600 per day for liquidated damages.

 We conclude that the doctrine of substantial completion does not apply to the facts of this case. In their statement of facts presented to this court, both sides agree upon the specific clause of the contract that is at issue in this appeal. A portion of this clause reads, "When the contract completion time is a fixed calendar date, it shall be the date on which *all* work on the Project *shall be completed.*" (Emphasis added.) The liquidated damages provision itself states that the $600 per day will be assessed when *"any work* shall remain."* (Emphasis added.) The contract between the parties does not consider substantial completion; rather, it considers final completion as determined by the UDOT engineer. There is no ambiguity about this point. Young and UDOT could have easily included the term and concept of "substantial performance" if they so intended. *See, e.g., Fluidair Products, Inc. v. Robeline–Marthaville Water Sys.*, 465 So.2d 969, 971 (La.Ct.App.1985); *Seppala & Aho–Spear Assoc. v. Westbrook Gardens*, 388 A.2d 88, 89 (Me.1978). The only requirement is that the engineer act in good faith in making this final determination. *Ledbetter Bros.*, 68 N.C.App. at 103–04, 314 S.E.2d at 766 (citing 5 Samuel Williston, *Law of Contracts* §§ 675A–B (3d ed. 1961)). No evidence exists to suggest that the UDOT engineer acted otherwise.

 As previously demonstrated, the UDOT liquidated damages provision is valid. Accepting Reliance's argument and applying the substantial completion doctrine would defeat the fundamental purpose of liquidated damages. They are meant to provide an honest and legitimate estimate of damages in case of delay. These types of provisions are justifiable on the ground that they promote economic efficiency. *Robbins*, 645 P.2d at 626. Reliance's argument calls for a determination of whether the project was indeed substantially completed and, if so, how substantial the completion was. Such determinations only foster additional and wasteful litigation. *Ledbetter Bros.*, 68 N.C.App. at 106, 314 S.E.2d at 767. Reasonable liquidated damages provisions are intended to be alternative resolutions to disputes. In addition, courts have consistently held that liqui-

dated damages provisions, aside from being compensatory, are valid and consistent with public policy as an appropriate means of inducing timely performance. *Robinson v. United States*, 261 U.S. 486, 488, 43 S.Ct. 420, 421, 67 L.Ed. 760, 762 (1923). It would frustrate this policy to allow disputes over substantial performance to render liquidated damages provisions unenforceable. *Ledbetter Bros.*, 68 N.C.App. at 104, 314 S.E.2d at 766–67.

■ Through this holding, we do not intend to prohibit the doctrine of substantial performance from ever applying in a liquidated damages case. There could be a case where the work remaining on a contracted project was so trivial that assessing the entire liquidated amount would result in gross unfairness. However, this is not such a case. Although the majority of the Young project was completed, the evidence demonstrates that certain, significant items were left undone. The site still required signs, topsoil, permanent striping, seeding, and other warm-weather landscaping. Even Reliance admits that approximately $350,000 worth of work remained on the project after the October 25 completion date. During this delay, UDOT incurred reasonable overhead expenses as a direct result of Young's tardiness. There is nothing grossly unfair about assessing the entire amount of liquidated damages in this case.

As applied, these liquidated damages are not a penalty. Reliance contends that since the public was using the entire portion of the highway under construction, substantial performance should apply and the liquidated damages amount should be adjusted downward accordingly. Reliance relies on *S.L. Rowland Construction Co. v. Beall Pipe & Tank Corp.*, 14 Wash.App. 297, 540 P.2d 912 (1975). In that case, a contractor and its surety sought to invalidate a liquidated damages provision in a water pipe contract. The court concluded that since the pipe was in full use by the municipality, the assessment of the entire liquidated

damages clause would have the in terrorem effect of solely inducing due performance rather than compensating for loss. It therefore invalidated the clause as a penalty. *Id.* at 921–22, 540 P.2d 912. In addition, the court found that the liquidated damages were not a reasonable forecast of just compensation and that the damages were not difficult to estimate. *Id.* at 922, 540 P.2d 912.

In our present case, as previously demonstrated, UDOT incurred significant overhead expenses regardless of how substantial Young's performance was. These liquidated damages, unlike those in *Rowland Construction*, were compensatory because they reimbursed UDOT for its daily monitoring charges. The liquidated damages provision was not intended to remunerate UDOT for denied use of the highway, but rather to simply compensate UDOT for keeping needed equipment and personnel on the project site.

We acknowledge that the Arkansas Court of Appeals has applied the doctrine of substantial performance and adjusted a liquidated damages provision in a construction case. *Phillips v. Ben M. Hogan Co.*, 267 Ark. 1104, 594 S.W.2d 39, 41–42 (App. 1980). We prefer the rationale in the court's dissenting opinion. "This liquidated damages clause was triggered not by lack of substantial performance, but rather by the failure to *complete* the work within the agreed upon time frame." *Id.* at 43 (emphasis added) (Penix, J., dissenting). Our case invites similar reasoning. In determining when a project is completed for liquidated damages purposes, the courts generally look to actual rather than substantial completion. *Morgen & Oswood Constr. Co. v. Big Sky of Mont.*, 171 Mont. 268, 557 P.2d 1017, 1022 (1977) (citing Sweet, *Liquidated Damages in California*, 60 Cal.L.Rev. 84, 123 (1972)). Using their experience in highway construction, two sophisticated commercial parties stipulated to reasonable damages in case of delay. Like the trial judge, this court will not intervene and create a "better" contract than the parties made for themselves.

Since we conclude that the doctrine of substantial completion does not apply in this case, we need not address Reliance's argument that this doctrine is the law in Utah. We therefore affirm the trial court's judgment and uphold the UDOT liquidated damages provision.

HALL, C.J., and DURHAM, STEWART and ZIMMERMAN, JJ., concur.